Slip Op. 07-64

UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |  |
|---|---|---|
| WAGNER SPRAY TECH CORPORATION, INC., | : : : : : | |
| Plaintiff, | : : | Before: WALLACH, Judge<br>Court No.: 04-00521 |
| v. | : : : | |
| UNITED STATES, | : : | |
| Defendant. | : : | |

[Plaintiff's Rule 56 Motion for Summary Judgment is DENIED and Defendant's Cross-Motion for Summary Judgment is GRANTED.]

Dated: May 4, 2007

Neville Peterson LLP, (Margaret R. Polito and Curtis W. Knauss) for Plaintiff Wagner Spray Tech Corporation, Inc.

Peter D. Keisler, Assistant Attorney General; Barbara S. Williams, Attorney-in-Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (Amy M. Rubin); and Chi S. Choy, Office of Assistant Chief Counsel, International Trade Litigation, U.S. Customs and Border Protection, of Counsel, for Defendant United States.

**OPINION**

**Wallach, Judge:**

**I
INTRODUCTION**

This matter is before the court on Plaintiff's Rule 56 Motion for Summary Judgment and

Defendant's Cross-Motion for Summary Judgment. Plaintiff, Wagner Spray Tech Corporation,

Inc. ("Wagner") challenges the United States Customs and Border Protection's ("Customs") classification of its imported merchandise under Heading 9603 of the Harmonized Tariff Schedule of the United States (2003) ("HTSUS") as "paint rollers" and "paint pads" at a duty rate of 7.5% or 4% ad valorem, respectively.  Plaintiff contends that the subject merchandise is properly classified at lower rates or duty free under HTSUS Headings 8413 and 8424 as "[p]umps for liquid . . . ." and "[m]echanical appliances . . . for projecting, dispersing or spraying liquids."  The court has jurisdiction over this action pursuant to 28 U.S.C. § 1581(a).  Because the subject merchandise can be classified as paint rollers and pads under HTSUS Heading 9603, Plaintiff's Motion for Summary Judgment is denied and Defendant's Cross-Motion for Summary Judgment is granted.

## II
## BACKGROUND

Plaintiff is the patent holder of component parts of a painting system designed to hold paint in a reservoir within the handle of the painting device and express the paint upon contact with the surface to be covered.[1]  According to Plaintiff, the purpose of its products is "to allow painters and homeowners to apply paint or stain to a surface without being required to repeatedly bend down to fill the pad or roller with paint or stain." Complaint ¶ 12.  Between November 15, 2002 and July 17, 2003 Wagner entered subject merchandise known as "Paint-N-Roll,"

---

[1] See United States Patent No. 4,732,503, Reservoir Fluid Dispenser with Control Valve 4:15-16 (March 22, 1988), Defendant's Appendix, Tab E ("The present innovation provides a paint roller that includes a self-contained paint supply.  A reservoir in the paint roller can be easily filled yet the roller provides a means for preventing the accidental expulsion of paint through the filling port."); United States Patent No. 471,552, Modular Manual Roller Handle, Defendant's Appendix, Tab F.

"PaintMate Plus," "StainMate" and "Trim-It" (collectively "Wagner products") through the port of Minneapolis, Minnesota. Summons, Court No. 04-00521 (October 14, 2004); Amended Summons, Court No. 04-00521 (May 10, 2005). Customs liquidated all entries between April 11, 2003 and May 28, 2004 and classified the subject merchandise under HTSUS Heading 9603, Subheadings 9603.40.2000 or 9603.40.4020,[2] as "Paint Rollers" and "Paint Pads," assessing a duty of 7.5% or 4% on the merchandise depending on whether the products were classified as rollers or pads. Complaint ¶ 18; see also Defendant's Memorandum in Support of its Cross-Motion for Summary Judgment and in Opposition to Plaintiff's Motion for Summary Judgment ("Defendant's Motion") at 1. Plaintiff paid all liquidated duties, taxes and fees associated with the entries at issue. Complaint ¶ 3; Answer ¶ 3. Wagner filed a protest on June 16, 2003 contesting Customs' classification of its imported merchandise.[3] Amended Summons. Customs

---

[2] HTSUS Heading 9603 and Subheadings 9603.40.2000 and 9603.40.4020 provide:

| | |
|---|---|
| 9603 | Brooms, brushes (including brushes constituting parts of machines, appliances or vehicles), hand-operated mechanical floor sweepers, not motorized, mops and feather dusters; prepared knots and tufts for broom or brush making; paint pads and rollers; squeegees (other than roller squeegees): |
| | * * * |
| 9603.40.2000 | Paint rollers |
| | * * * |
| 9603.40.4020 | Paint pads |

[3] In its Protest Wagner asserted that its merchandise is properly classified in any of HTSUS Subheadings 8424.20.90, 8424.89.7090, or 8413.50.90. In Count 3 of its Complaint Wagner argued that its merchandise is also properly classified in Subheadings 8424.20.1000 and 8413.20.0000, omitting Subheading 8413.50.90. Complaint ¶ 29. Because Plaintiff does not re-assert the contention that its products are classifiable in Subheading 8413.50.90 neither in its Complaint and in its Motion for Summary Judgment the court assumes that Plaintiff has

denied Plaintiff's protest on May 26, 2004.[4] Id. Plaintiff filed another protest concerning the importation of identical merchandise classified under HTSUS Heading 9603 on August 11, 2004, which was denied on August 18, 2004.[5] Id. On October 14, 2004, Plaintiff timely commenced a civil action contesting Customs' denial of these protests pursuant to 28 U.S.C. § 1581(a). In Plaintiff's Motion, it asserts that the merchandise is properly classified in any of HTSUS Subheadings 8413.20.00,[6] 8424.20, 8424.20.10 or 8424.20.90.[7] Both parties to this case

---

abandoned this argument.

[4] Protest Number 3501-03-100028 concerns Entry Numbers: 336-4175029-6, 336-4175096-5, 336-4175099-9, 336-4175098-1, 336-4025526-0, 336-4175100-5, 336-4175030-4, 336-4174443-0, 336-4025516-4, 336-4025519-8, 336-4174446-3, 336-4175602-0, 336-4025225-2, 336-4025227-8, 336-4025371-4, 336-4025517-2, 336-4175031-2, 336-4175028-8, 336-4174543-7, 336-4175032-0, 336-4175033-8, 336-4175095-7, 336-4175034-6, 336-4175097-3, 336-4175101-3, 336-4175315-9, 336-4175599-8, 336-4175601-2, 336-4175603-8, 336-4176239-0, 336-4175915-6, 336-4176241-6. Amended Summons.

[5] Protest Number 3501-04-100033 concerns Entry Numbers: 336-4494937-4, 336-4495220-4, 336-4494952-3. Amended Summons.

[6] HTSUS Heading 8413 and subheading 8413.2000 provide:

| 8413 | Pumps for liquids, whether or not fitted with a measuring device; liquid elevators; part thereof:<br>Pumps fitted or designed to be fitted with a measuring device: |
|---|---|
| | * * * |
| 8413.2000 | Hand pumps, other than those of subheading 8413.11 or 8413.19 |

[7] HTSUS Heading 8424 and subheadings 8424.20, 8424.20.10 and 8424.20.90 provide:

| 8424 | Mechanical appliances (whether or not hand operated) for projecting, dispersing or spraying liquids or powders; fire extinguishers, whether or not charged; spray guns and similar appliances; stream or sand blasting machines and |

4

submitted motions for summary judgment. The court may only grant a motion for summary judgment in classification cases where there is no genuine issue as to what the merchandise is, or where none of the articles' "pertinent characteristics" are in dispute. Rollerblade, Inc. v. United States, 112 F.3d 481, 483 (Fed. Cir. 1997). The parties' disagreements on the issues of fact are not material to the outcome of this case and therefore do not preclude entry of a summary judgment.[8] Oral argument was held on February 7, 2007.

### III
### STANDARD OF REVIEW

A motion for summary judgment shall be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." USCIT R. 56(c). Where both parties have moved for summary judgment the

---

similar jet projecting machines; parts thereof:

\* \* \*

| | | |
|---|---|---|
| 8424.20 | | Spray guns and similar appliances: |
| | 8424.20.10 | Simple piston pump sprays and powder bellows |

\* \* \*

| | | |
|---|---|---|
| | 8424.20.90 | Other |

[8] An issue of material fact could arise were the court to proceed to a General Rules of Interpretation ("GRI") 3 analysis which would require the court to make a factual determination regarding whether Wagner products contain a pump for purposes of HTSUS Heading 8413. Because all subject merchandise in question fall within the scope of Heading 9603 pursuant to a GRI 1 analysis, no issue of material fact exists based on the papers, pleadings and oral argument in this case.

court need not grant either motion because "summary judgment for either party is not proper if disputes remain as to material facts." Mingus Constructors, Inc. v. United States, 812 F.2d 1387, 1391 (Fed. Cir. 1987). However, "the Court of International Trade has not hesitated to decide classification cases on summary judgment when that was appropriate." Bausch & Lomb, Inc. v. United States, 148 F.3d 1363, 1365 (Fed. Cir. 1998). In classification cases, summary judgment is appropriate where there is no underlying factual issue of what the merchandise is, because "the proper classification under which [an article] falls . . . has always been treated as a question of law." Id. at 1366; see also Mead Corp. v. United States, 283 F.3d 1342, 1345-46 (Fed. Cir. 2002). The court employs a two-step analysis when deciding classification cases: "the first step concerns the proper meaning of the tariff provisions at hand . . . [t]he second step concerns whether the subject imports properly fall within the scope of the possible headings." Universal Elecs. Inc. v. United States, 112 F.3d 488, 491 (Fed. Cir. 1997). In addition, because Customs' factual determination is statutorily presumed to be correct, "the party challenging the classification . . . bears the burden of proof." Totes, Inc. v. United States, 69 F.3d 495, 498 (Fed. Cir. 1995) (citing 28 U.S.C. § 2639(a)(1)). The court reviews de novo classification cases brought pursuant to §1581(a) in accordance with 28 U.S.C. § 2640(a).

## IV
## ANALYSIS

**The Imported Wagner Products Were Properly Classified by Customs under the Eo Nomine Designation of HTSUS Heading 9603**

### A
### General Rules for Classification of Goods

The proper classification of merchandise entering the United States is governed by the

General Rules of Interpretation ("GRI") of the Harmonized Tariff Schedules of the United States. See, e.g., Orlando Food Corp v. United States, 140 F.3d 1437, 1439 (Fed. Cir. 1998). GRI 1 in pertinent part states that "for legal purposes, classification shall be determined according to the terms of the headings and any relative section or chapter notes." GRI 1, HTSUS. For clarification of the scope of a tariff heading, the court may refer to the Explanatory Notes ("ENs") accompanying each heading, which is the Customs Cooperation Council's official interpretation of the HTSUS. See, e.g., Carl Zeiss, Inc. v. United States, 195 F.3d 1375, 1378 n.1 (Fed. Cir. 1999). Although the Explanatory Notes are not controlling "they should be consulted for guidance" and are "generally indicative of the proper interpretation of the various provisions of the [HTSUS]" and "thus useful in ascertaining the classification of merchandise under the system." H.R. Conf. Rep. No. 100-576 at 549 (1987), reprinted in Legislative History of the Omnibus Trade and Competitiveness Act of 1988 (1988); see also Carl Zeiss, 195 F.3d at 1378 n.1.

An eo nomine provision describes goods according to "their common and commercial meaning." Carl Zeiss, 195 F.3d at 1379. A court may "rely upon its own understanding of the terms used" or consult lexicography or other reliable sources to define the tariff term. Id. In addition, "[a]n eo nomine provision that names an article without terms of limitation, absent evidence of a contrary legislative intent, is deemed to include all forms of the article." Chevron Chem. Co. v. United States, 23 CIT 500, 505, 59 F. Supp. 2d 1361 (1999) (citing Nootka Packing Co. v. United States, 22 CCPA 464, 469-70 (1935)). Furthermore, "an article which has been improved or amplified but whose essential characteristic is preserved or only incidentally altered is not excluded from an unlimited eo nomine statutory designation." Casio, Inc. v. United

States, 73 F.3d 1095, 1098 (Fed. Cir. 1996) (citing Robert Bosch Corp. v. United States, 63 Cust. Ct. 96, 103-04 (1969)).  If classification is not resolved satisfactorily by application of GRI 1, the court will refer to the succeeding GRIs in numerical order. See, e.g., Conair Corp. v. United States, Slip Op. 05-95, 2005 Ct. Int'l Trade LEXIS 104, at *7 (CIT August 12, 2005).

When goods are prima facie classifiable under two or more headings, classification is resolved by application of GRI 3. GRI 3, HTSUS; see also Bauer Nike Hockey USA, Inc. v. United States, 393 F.3d 1246, 1252 (Fed. Cir. 2004).  GRI 3(a) provides that the more specific description of a good shall be preferred over a more general description. Id.  To discern which is the more specific description "a court 'looks to the provision with requirements that are more difficult to satisfy and that describe the article with the greatest degree of accuracy'" in accordance with the "relative specificity" analysis mandated by GRI 3(a). Len-Ron Mfg. Co., Inc. v. United States, 334 F.3d 1304, 1313 (Fed. Cir. 2003) (quoting Carl Zeiss, 195 F.3d at 1380).  The Explanatory Notes to GRI 3(a) provide that "[a] description by name is more specific than a description by class." Explanatory Note, Rule 3(a) (2003).  GRI 3(b) assumes that the article is a composite good, not encompassed by a single heading, which will be classified according to the component of the subject merchandise which imparts the good with its "essential character." GRI 3(b).

**B**
**The Court Need Not Consider Classification of Wagner Products Beyond GRI 1 Because HTSUS Heading 9603 Encompasses the Subject Merchandise in its Entirety**

Wagner's principal argument is premised on the court finding that no single HTSUS heading describes its products in their entirety, and that the court must therefore proceed to a GRI 3 analysis. See Memorandum of Points and Authorities in Support of Plaintiff's Rule 56 Motion

for Summary Judgment ("Plaintiff's Motion") at 19.  Plaintiff does not entertain the possibility that the court may resolve classification by application of GRI 1, stating "the unique features of the Wagner Products result in these Products being described in more than one heading." Id. at 11.  Wagner attempts to distinguish its products from what it calls "traditional" paint rollers and pads by attributes such as the pump that transports paint from the paint can into the handle of the paint roller, the existence of a reservoir in the handle and the metric capacity of the product to hold paint. Id. at 2.  Wagner asserts that its products cannot be classified as paint rollers and pads because such items do not traditionally contain trigger devices, reservoirs, intake valves, outlet valves and pistons, nor do traditional rollers project paint from inside the roller core. Id. at 5-6.

Defendant argues that the imported articles were appropriately classified by Customs in Heading 9603 as "Paint rollers" or "Paint pads" and that because the subject merchandise is wholly encompassed by a single tariff provision, no analysis beyond GRI 1 is needed. Defendant's Motion at 10; HTSUS Heading 9603.  The Government asserts that Heading 9603 is an eo nomine provision encompassing "specifically identified products" including "paint pads and rollers." Id.  In support of its contention that Wagner products contain identical features to traditional paint rollers and pads, Defendant cites to the Explanatory Notes accompanying Heading 9603 which describe paint rollers as containing "a roller" and "a handle."[9] Id. at 10-11.

---

[9] The Explanatory Notes to Heading 9603 describe paint rollers and pads as follows:

> Paint rollers consist of a roller covered with lambskin or other material mounted on a handle.
>
> Paint pads consist of a flat surface, for example, of woven fabric attached to a hard back, usually of plastics; they may have handles.

Explanatory Note 96.03(F) (2003).

9

Defendant refutes Plaintiff's attempt to distinguish its products from traditional paint pads and rollers, arguing that Wagner products' added features do not transform the products, but are merely improved versions of traditional paint pads and rollers. Id. at 11. Defendant also notes that Plaintiff periodically refers to its own products as "paint rollers" or "paint pads" both in its patents and in its regular marketing. Id. (citing Patent No. 4,732,503; Defendant's Appendix, Tabs P, Q).

The role of the court in a classification case is to construe the proper meaning of the tariff terms at issue and then to determine whether the subject imports fall within the scope of the heading. See, e.g., Universal Elecs. Inc. v. United States, 112 F.3d at 491. Heading 9603 is an eo nomine provision, which describes the goods according to their "common and commercial meaning." See Carl Zeiss, 195 F.3d at 1379. An article which has also been "improved or amplified" is not excluded from an eo nomine designation. See Casio, 73 F.3d at 1098; JVC Co. of Am. v. United States, 234 F.3d 1348, 1352 (Fed. Cir. 2000). Absent terms of limitation or a "demonstrated contrary legislative intent, judicial decision, or administrative practice," an eo nomine designation includes "all forms of the product, including improved forms." Chevron Chemical Co. v. United States, 23 CIT 500, 505, 59 F. Supp.2d 1361 (1999); Normura (Am.) Corp. v. United States, 62 Cust. Ct. 524, C.D. 3820 (1969), aff'd, 58 CCPA 82, 435 F.2d 1319 (1971). Here, Plaintiff's products are improved versions of traditional paint pads and rollers. Webster's Dictionary defines a paint roller as one that "consists typically of a rotating cylinder . . . covered with an absorbent material and mounted on a handle so that the cylinder can be dipped into paint or otherwise . . . be supplied with paint and rolled over a flat surface . . . so as to apply the paint." WEBSTER'S THIRD NEW INT'L DICTIONARY 1622 (1986). Each Wagner product

contains a paint pad or a paint roller, which resembles a conventional pad or roller, and the function of each product is identical to traditional pads and rollers, to spread paint onto surfaces. The method by which this is accomplished does not warrant classification based on only component parts of the products, nor does it render the products prima facie classifiable in more than one heading. Heading 9603 properly classifies the products according to their common and commercial meaning as paint pads or paint rollers, albeit amplified by the patented Wagner roller core and handle. Therefore Customs properly classified the subject merchandise.

## C
## Wagner Products are Not Classifiable Under Heading 8424 or 8413 of the HTSUS

Wagner argues that although its products appear "at first blush" to be described in Heading 9603, they are prima facie described by more than one heading due to their "unique features" and are classifiable under Headings 8413 and 8424. Plaintiff's Motion at 11.

## 1
## HTSUS Heading 8413

Plaintiff argues that each Wagner product is a "pump" and therefore properly classified under Heading 8413, providing for "[p]umps for liquids, whether or not fitted with a measuring device; liquid elevators; part thereof." Id. at 12. Wagner contends that its products share characteristics with pumps and other appliances that are properly classified under Heading 8413, rendering its painting devices prima facie classifiable as "pumps." Id. at 12-13. Wagner describes the mechanics of its products in detail, arguing that the internal functioning of its products amount to a legally accepted definition of a pump. Id. at 13-15 (citing Hancock Gross, Inc. v. United States, 64 Cust. Ct. 97, C.D. 3965 (1970); Fedtro, Inc. v. United States, 65 Cust.

Ct. 35, C.D. 4050 (1970)). Plaintiff asserts that the existence of an intake valve, an outlet valve and a piston renders each Wagner product a "pump" for purposes of classification. Id. at 14-15. Plaintiff further contends that this court's decision in Conair Corp. v. United States establishes that a product may be classified as a "pump" even where the product is composed of many other elements. Id. at 14.

In opposition to Plaintiff's assertion, Defendant argues that in order for a product to be prima facie classifiable as a pump in Heading 8413, the merchandise must "continuously displace[] volumes of liquid" as spelled out in the ENs to the heading. Defendant's Motion at 22; see also Defendant's Reply to Plaintiff's Response to Defendant's Cross-Motion for Summary Judgment ("Defendant's Reply") at 10.[10] Defendant notes that in Rainin Instrument Co., Inc. v. United States, 288 F. Supp. 2d 1360, 1367 (CIT 2003), the court held that "'intermittently carrying minute amounts of liquid from a source container to a destination container simply is not the equivalent of continuously displacing volumes of liquids by means of a pump'" and that pumps thus are defined by the "activity they create" and not by the absence or existence of a valve. Defendant's Motion at 22-23 (quoting Rainin, 288 F. Supp. 2d at 1367). Further, Defendant notes that the Rainin court held classification in that case was "controlled by what the imported article was constructed and designed to do" and that the pipettes in question were not

---

[10] The ENs to Heading 8413 state that:

> This heading covers most machines and appliances for raising or otherwise continuously displacing volumes of liquids (including molten metal and wet concrete), whether they are operated by hand or by any kind of power unit, integral or otherwise."

Explanatory Note 84.13 (2003).

designed to "pump" liquids. Id. Defendant furthermore notes that Wagner does not sell its painting system as "pumps" and that while a product need not be exclusively referred to in the marketing or product description of the article as its HTSUS designation, Plaintiff appears to only designate its product as a pump for purposes of this lawsuit. Id. at 24.

It is obvious to the court that "pump" in and of itself does not adequately describe the products at issue. Plaintiff's reliance on Conair is misplaced because the court did not classify the subject merchandise under an eo nomine provision, having determined that no HTSUS heading provided an adequate description of a decorative fountain as an "article in all its forms." Conair, 2005 Ct. Int'l Trade LEXIS 104, at *10. Based on this finding the court designated the article as a composite product and undertook a GRI 3(b) analysis from which it concluded that the "essential character" of the decorative fountains at issue was not imparted by various simulated rocks and bamboo, but by the pump. Conair at *21.

In this case, even if Wagner products contain a "pump" as defined in Heading 8413, such a pump would not impart the products with their "essential character" because the subject merchandise is made for painting, not pumping, and the object of Plaintiff's product is not to remove paint from a bucket, but to spread it on walls. Furthermore, as the court stated in Fedtro, "[w]ith respect to [articles having dual or multiple end uses], 'the question is not so much what . . . [the imported article] does as what it primarily was constructed and designed to do,' insofar as classification of the article is concerned . . . ." Fedtro, 65 Cust. Ct. at 44 (quoting United Carr Fastener Corp. v. United States, 54 C.C.P.A. 89, C.A.D. 913 (1967), aff'g 56 Cust. Ct. 347, C.D. 2648 (1966)). However, because classification of Wagner products can be resolved under a GRI 1 analysis, the court need not reach a GRI 3 analysis.

## 2
## HTSUS Heading 8424

Wagner maintains that its products are also described in Heading 8424 as "Mechanical appliances (whether or not hand operated) for projecting, dispersing or spraying liquids or powders." Plaintiff's Motion at 15; HTSUS Heading 8424.  Wagner contends that its "patented roller core" projects, disperses and sprays the liquid in "five streams or jets" and "by the feed channels inside the roller core." Plaintiff's Motion at 17-18.  In support of its contentions, Wagner explains that pumps often are mechanisms causing the projection, dispersion or spray of liquids and that Customs routinely classifies, for example, spray bottles for household use and condiment dispensers under Heading 8424. Id.  Plaintiff also argues that, absent legislative intent to the contrary, the use provision is preferred where a product is described by both a use provision and an eo nomine provision. Id. at 19 (citing United States v. Siemens Am., Inc., 68 C.C.P.A. 62, 653 F.2d 471, 478 (1981)).

The Explanatory Notes to Heading 8424 provide in part that "spray guns . . . are usually designed for attaching to compressed air or steam lines . . . .[and] are used for spraying paint," none of which applies to the subject merchandise. Defendant's Motion at 19.[11]  Defendant points

---

[11] The ENs to Heading 8424 provide:

> Spray guns and similar hand controlled appliances are usually designed for attaching to compressed air or steam lines, and are also connected, either directly or through a conduit, with a reservoir of the material to be projected. They are fitted with triggers or other valves for controlling the flow through the nozzle, which is usually adjustable to give a jet or more or less divergent spray. They are used for spraying paint or distemper, varnishes, oils, plastics, cement, metallic powders, textile dust, etc.. They may also be used for projecting a powerful jet of compressed air or steam for cleaning stonework in buildings, statuary, etc.

Explanatory Note 84.24(B) (2003).

to the fact that in discovery Plaintiff affirmatively concluded that its products "are not paint sprayers" and do not work like "paint sprayers" and that Plaintiff has offered no evidence that its painting devices act as paint sprayers. Id. at 18 (citing Interrogatory no. 29, Defendant's Appendix, Tab H).  Defendant further refutes that Wagner products propel liquid onto a surface, arguing that the products instead cause the paint to flow through the holes of the applicator, and contrary to a paint sprayer, do not break down the paint into fine particles that are "thrown, scattered or strewn" out of the product. Id. at 19; see also Defendant's Reply at 12.  Defendant also notes that in order for Wagner products to be prima facie classifiable in Heading 8424, the product as a whole is at issue and not only the way in which liquid is expressed from the product. Defendant's Motion at 20.

  Plaintiff's assertion that the subject merchandise is appropriately classified as a "spray painter" is contradicted by Plaintiff's statement in response to Defendant's interrogatories, that paint is "dispersed only from the roller core and onto the roller (or pad)," and the paint distributed from the roller to the surface is achieved by means of "friction and surface tension." Defendant's Appendix, Tab H, Pl.'s Response to Def.'s First Interrogatories and Request for Production at 14-15 (November 15, 2006).  More importantly, if Plaintiff's proposed designation were accepted, Heading 8424 would include all paint rollers and pads because all such products are designed to project, disperse, or spray liquids in order to achieve the objective of getting paint on a surface.  However, since there is a separate paint roller provision in the HTSUS which is a more specific designation of the article, such a designation is preferred.  The Explanatory Notes to GRI 3 provide that a description "by name is more specific than a description by class."

Explanatory Note, Rule 3(a) (2003).  Mechanical goods for the purpose of "projecting, dispersing or spraying liquids" clearly refer to a class of goods, whereas "paint pads" and "paint rollers" are a designation of goods by name.  Wagner's attempt to distinguish its products from traditional paint pads and rollers is not persuasive because it is well established that even improved versions of the goods may be covered by the <u>eo nomine</u> designation of the article. <u>See, e.g</u>, <u>Casio</u>, 73 F.3d at 1098.  In its Reply, Wagner elaborates on how its products fit the mechanical description of Heading 8424, still ignoring the fact that even under a GRI 3(a) analysis, a more specific heading is preferred, which in this case is Heading 9603.

**D**
**Wagner Products are Not Precluded from Classification Under**
**Heading 9603 by <u>Bausch & Lomb, Inc. v. United States</u>**

Wagner argues that its products are precluded from classification under Heading 9603 because case law has narrowly construed this heading to include only brushes, rollers and pads as separate items, and not appliances that incorporate rollers and pads. Plaintiff's Motion at 20. Plaintiff's argument is based on the Federal Circuit's holding in <u>Bausch & Lomb</u>, in which the court held that electrical toothbrushes were excluded from classification under Heading 9603, and that only if the brush was imported separately would it fall under this provision. <u>Bausch & Lomb</u>, 148 F.3d at 1367.  Plaintiff argues that this supposed limitation on the scope of the provision is further supported by the Explanatory Notes to Heading 9603. Plaintiff's Motion at 21.  Wagner also argues that the existence of other HTSUS headings covering different types of paint rollers is indicative that not all products that incorporate paint rollers are within the scope of Heading 9603. <u>Id.</u> at 22.

Defendant counters that <u>Bausch and Lomb</u> concerned language in Heading 9603

16

pertaining only to "brooms and brushes" and that the court's decision was appropriate given the nature of merchandise at issue. Defendant's Motion at 14-15.

Heading 9603 contains four distinct groupings of merchandise separated by semicolons, which in tariff provisions "create a wall around each grouping of items, preventing the qualifying language from one grouping from applying to another." JVC Co. of Am. v. United States, 23 CIT 523, 62 F. Supp. 2d 1132, 1136 (1999), aff'd 234 F.3d 1348 (Fed. Cir. 2000).  Heading 9603 provides for the following four categories of merchandise: (1) "Brooms, brushes (including brushes constituting parts of machines, appliances or vehicles), hand-operated mechanical floor sweepers, not motorized, mops and feather dusters;" (2) "prepared knots and tufts for broom or brush making;" (3) "paint pads and rollers;" (4) "squeegees (other than roller squeegees)." HTSUS Heading 9603.  The fact that brushes imported separately from machines, appliances or vehicles are appropriately classified in Heading 9603, does not give rise to the conclusion that only paint rollers and pads imported separately from machines, appliances or vehicles are covered by this provision.  Furthermore, nothing in the Explanatory Notes to Heading 9603 expressly excludes paint pads or rollers with other features in addition to the applicator and handle.  As a result, Plaintiff's argument is at odds with the canons of statutory construction and misapplied to the tariff provision at issue.

## V
## CONCLUSION

For the foregoing reasons Plaintiff's Motion for Summary Judgment is denied and Defendant's Motion for Summary Judgment is granted.  Accordingly, Customs' classification of Wagner products, Paint-N-Roll, PaintMate Plus, StainMate and Trim-It in HTSUS Heading

9603, Subheadings 9603.40.2000 and 9603.40.4020 is affirmed.

                                                __/s/ Evan J. Wallach___

                                                Evan J. Wallach, Judge

Dated: May 4, 2007
       New York, New York

UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |  |  |
|---|---|---|---|
| WAGNER SPRAY TECH CORPORATION, INC., | : | | |
| | : | | |
| Plaintiff, | : | Before: | WALLACH, Judge |
| | : | Court No.: | 04-00521 |
| v. | : | | |
| UNITED STATES, | : | | |
| Defendant. | : | | |

ORDER AND JUDGMENT

This case having come before the court upon the Motion for Summary Judgment filed by Plaintiff Wagner Spray Tech Corporation, Inc. ("Plaintiff's Motion"), and the Cross Motion for Summary Judgment filed by Defendant United States Government ("Defendant's Motion"); the court having reviewed all papers and pleadings on file herein, having heard oral argument by each party, and after due deliberation, having reached a decision herein; now, in conformity with said decision, it is hereby

ORDERED, ADJUDGED and DECREED that Plaintiff's Motion is DENIED; and it is further

ORDERED, ADJUDGED and DECREED that Defendant's Motion is GRANTED; and it is further

ORDERED, ADJUDGED and DECREED that the imported items at issue in this case are properly classified under Heading 9603, Subheadings 9603.40.2000 and 9603.40.4020 of the Harmonized Tariff Schedule of the United States (2003), at a duty of 7.5% and 4% *ad valorem*; and it is further

ORDERED, ADJUDGED and DECREED that judgment be, and hereby is, entered in favor of Defendant and against Plaintiff.

                                                                   __/s/ Evan J. Wallach__
                                                                     Evan J. Wallach, Judge

Dated: May 4, 2007
      New York, New York

## NOTICE OF ENTRY AND SERVICE

This is a notice that an order or judgment was entered in the docket of this action, and was served upon the parties on the date shown below.

Service was made by depositing a copy of this order or judgment, together with any papers required by USCIT Rule 79(c), in a securely closed envelope, proper postage attached, in a United States mail receptacle at One Federal Plaza, New York, New York 10278 and addressed to the attorney of record for each party at the address on the official docket in this action, except that service upon the United States was made by personally delivering a copy to the Attorney-In-Charge, International Trade Field Office, Civil Division, United States Department of Justice, 26 Federal Plaza, New York, New York 10278 or to a clerical employee designated, by the Attorney-In-Charge in a writing filed with the clerk of the court.

or

Service was made electronically, by the Court's CM/ECF system, upon those parties that have filed a Notice of Consent to Electronic Service.

Tina Potuto Kimble
Clerk of the Court

Date: _____    By: _____
                                      Deputy Clerk